**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

LATASHIA M. LOVE,                          :

     Plaintiff,                          :

vs.                                        :          CA 16-0385-MU

NANCY A. BERRYHILL,                        :
Acting Commissioner of Social Security,
                                           :
     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 15 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 17 (order of reference)). Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the April 26, 2017 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 15 ("An appeal from a judgment (Continued)

# I. Procedural Background

Plaintiff protectively filed an application for disability insurance benefits on April 6, 2015, alleging disability beginning on March 31, 2015. (*See* Tr. 133-34.) Her claim was initially denied on May 7, 2015 (Tr. 91-95) and, following Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 98-100), a hearing was conducted before an ALJ on January 8, 2016 (Tr. 43-76). On March 24, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to disability insurance benefits. (Tr. 24-38.) More specifically, the ALJ went to the fifth step of the five-step sequential evaluation process and determined that Love retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 37 *with* Tr. 73-74). On April 26, 2016, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 17-18) and, the Appeals Council denied Love's request for review on June 30, 2016 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine with sciatica and partial sacralization at L5, migraine headaches, obstructive sleep apnea, tinnitus, obesity, peripheral vestibular disorder, fibromyalgia, depression, and post-traumatic stress disorder ("PTSD"). In light of the issues raised by Plaintiff in her

---

entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

brief (*see* Doc. 9, at 2 & 7), the Court simply replicates most of the residual functional

capacity portion of the ALJ's decision (Tr. 30-36), as follows:

> **5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of sedentary work as defined in 20 CFR 404.1567(a). She can lift and carry 10 pounds occasionally. She can stand or walk 2 hours per eight-hour workday and sit for 6 hours per eight-hour workday, with customary breaks. She can occasionally stoop, but is precluded from climbing, kneeling, crouching, and crawling. She is precluded from working at unprotected heights; operating hazardous, moving equipment, or driv[ing]. She is precluded from exposure to loud noises or noxious chemical fumes or gases. She is precluded from pushing and pulling leg and foot controls. She requires a hand-held assistive device for prolonged ambulation (more than three minutes) on uneven terrain. She cannot work around light above the office level, and cannot operate vibratory equipment. She can perform short, simple, routine tasks. She can work in customary proximity to coworkers but is precluded from coordinating with them in order to complete her own tasks. She can occasionally interact with the public. She can attend and concentrate for two hours, after which she is expected to be off task for approximately three minutes before resuming work tasks.**

.      .      .

> June 2013 to April 2015 records from VA Gulf Coast Veteran's Health note complaints of Meniere's [d]isease, vertigo, lightheadedness, migraine headaches, and pain that the claimant rated as 7 to 10 out of 10. Examination findings revealed positive straight leg raise tests, tenderness to palpitation at L4-5, reduced range of motion of the lumbar spine, and obesity, which led to diagnoses of degenerative disc disease of the lumbar spine, obstructive sleep apnea, migraine headaches, tinnitus, and obesity. Additionally, multiple x-rays note congenital sacralization at L5.

> The record also includes, however, otherwise normal examination findings, including normal reflexes and strength in the upper and lower extremities, negative straight leg raise tests, normal range of motion of the claimant's hip and ankles, and indications that the claimant ambulated without the assistance of devices. Additionally, a May 2014 audiogram noted normal hearing in her bilateral ears and notes indicate that the claimant did not suffer from vertigo or Meniere's disease. These records note that the claimant's spinal problems were not service related, she was prescribed traction therapy, and she indicated on at least one occasion[] that she was "doing good[.]"

July 2015 records note that the claimant was prescribed orthopedic inserts for her shoes to help her back. August 2015 records from Gulf Coast Pain Institute note that the claimant received multiple facet joint injections for management of her pain. August to September 2015 records note diagnoses of lumbar spondylosis, facet syndrome, and sciatica, which were based on spinal pain, spasms, and weakness. Examination findings revealed tenderness to palpitation, some distress because of pain, decreased sensation and range of motion, and obesity, and the claimant received facet joint injections. Otherwise, however, examination findings were essentially normal, including a normal heart and other symptoms, including her hearing and breathing.

Finally, April to September 2015 records from VA Biloxi noted complaints of pain that [s]he rated 7 to 10 out of 10, migraine headaches that last 4 to 5 hours, problems falling, and low back pain with radiculopathy, which led to diagnoses of degenerative disc disease of the lumbar spine, paravertebral muscle spasms, obstructive sleep apnea, migraine headaches, tinnitus, and obesity. Examination findings from this period note elevated blood pressure readings, obesity, tenderness to palpitation in her lumbar spine and hip, and pain on range of motion in her lumbar spine. Records also note, however, on other occasions that the claimant noted her pain levels were 0 out of 10 and she denied dizziness. Other examination findings revealed that the claimant was not in acute distress, she had full range of motion in her back, normal upper and lower extremities, negative straight leg raise tests, and ambulated with a normal gait and station, while a July 2015 electromyography (EMG) revealed no evidence of neuropathy. These records also note that she quit her job to "invest in her health and wellness" and wanted to open a counseling center, and she indicated that she was performing gardening.

The aforementioned objective findings and the claimant's admissions and activities reduce the overall credibility of her allegations and undermine any alleged disabling limitation resulting from her degenerative disc disease of the lumbar spine, migraine headaches, obstructive sleep apnea, tinnitus, obesity, and peripheral vestibular disorder. Although the evidence of record documents the claimant's diagnoses and treatment for these impairments, a review of the overall evidence of record includes a wealth of relatively normal examination findings on multiple occasions, including normal audiology testing, no vertigo, negative straight leg raise tests, and a normal gait.

Additionally, the claimant's admitted and indicated activities and abilities undermine the alleged severity of her allegations. She indicated that she stopped working to invest in her health and wellness and noted that while she was okay not working at the time, she wanted to open a counseling

center in the future. She also indicates that she performs activities that are inconsistent with the level of symptomology that she alleges, including caring for her 2-year-old child, preparing meals, performing some household chores, driving, and gardening.

Based on the overall evidence of record, including the aforementioned examples, I find the claimant's allegations regarding the intensity, duration, and persistence of her symptomology to be less than fully credible.

Accordingly, the aforementioned objective findings, including the relatively normal examination findings from throughout the VA records, as well as the claimant's admitted activities and abilities, including caring for her children, driving, and gardening, all indicate that the claimant's symptomology resulting from her degenerative disc disease of the lumbar spine, migraine headaches, obstructive sleep apnea, tinnitus, obesity, and peripheral vestibular disorder are not completely disabling. However, I note that the claimant's occasional symptomology can reasonably be expected to cause some limitations to the claimant's ability to function, and has limited the claimant to a wide range of work at the sedentary exertional level. The limitation to lifting and carrying 10 pounds occasionally; standing or walking 2 hours per eight-hour workday; occasionally stooping; and the preclusion from climbing, kneeling, crouching, and crawling all accommodate her degenerative disc disease of the lumbar spine, migraine headaches, obstructive sleep apnea, tinnitus, obesity, and peripheral vestibular disorder. The preclusion from exposure to loud noises, noxious chemical fumes or gases, the preclusion from exposure to light above the office level, and the preclusion from exposure to vibrations, including vibratory equipment[,] further accommodates the claimant's migraine headaches. The preclusion from pushing and pulling leg and foot controls further accommodates the claimant's degenerative disc disease of the lumbar spine. The requirement for a hand-held assistive device for prolonged ambulation further accommodates her vertigo and problems with falling. The preclusions from working at unprotected heights; operating hazardous, moving machinery; and the driving accommodate the claimant's vertigo, concentration deficits secondary to pain, and potential medication side effects.

As for opinion evidence, I have considered and give[n] great weight to the May 2015 opinion of James Sims, M.D., who reviewed the evidence of record and indicates that the claimant can perform a range of light work. This opinion is generally consistent with the overall evidence of record, including the relatively normal examination findings from throughout the record, as well as the claimant's admitted and indicated activities and abilities, which include gardening, driving, and performing some household chores.

I give no weight to the September 2015 opinion of Chris Zandt, Physician Assistant, as he is not a medically acceptable source, any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner, and this opinion is inconsistent with the relatively normal examination findings from throughout the record, as well as the claimant's admitted and indicated activities and abilities.

Turning to the claimant's mental impairments, the objective medical findings and admitted activities and abilities support the limitation in 5, above, that the claimant can perform simple, routine tasks consistent with unskilled work with additional limitations related to social interactions and attention and concentration.

The record includes physical treatment records that document the claimant's complaints of anxiety and depression, but also not[e] relatively normal mental examination findings, including alertness and orientation.

June 2013 to April 2015 records from VA Gulf Coast include complaints of sleep problems and nightmares, which led to diagnoses of a depressive disorder and anxiety-related disorders, including post-traumatic stress disorder (PTSD). Although the claimant received a global assessment of functioning (GAF) score of only 50, mental examination findings were essentially normal including proper alertness and orientation, intact memory, intact attention and concentration, a euthymic mood, a pleasant affect, good eye contact, cooperation, and good grooming with casual dress.

Likewise, April to September 2015 records from VA Biloxi include diagnoses for depression and PTSD, which were based on complaints of no social life, marital problems, relationship problems, and problems dealing with others, as well as examination findings that included abnormal mood and dysthymic affect. These records also note, however, that the claimant denied homicidal and suicidal ideations, and she indicated that she was "doing okay." Other examination findings also revealed that she was in no acute distress, was alert and oriented, had proper dress and grooming, had intact attention and concentration, demonstrated appropriate eye contact, had a normal mood, and had intact memory.

The aforementioned objective findings do not support a determination that the claimant is disabled by her mental impairments. Although the aforementioned records document the claimant's diagnoses and treatment for her mental impairments, a review of the overall evidence of record includes a wealth of relatively normal mental examination findings,

including proper dress and grooming, intact attention and concentration, intact memory, and proper mood and affect.

Additionally, the claimant's admitted and indicated activities and abilities undermine the severity of her symptomology resulting from her depression and anxiety-related disorders, including PTSD. She has presented as properly dressed and groomed on examination. She cares for her children, shops, drives, performs some household chores, and is able to handle her own finances. She gets along "as expected" with authority figures. She lives with family and notes that she helps care for her children, who are 2 and 13 years old. She notes no problem with memory, completing tasks, understanding, or following instructions. The claimant also indicates that she can perform concentration intensive tasks that include caring for her children, performing some household chores, preparing some meals, handling her own finances, and driving. Further, she has an email address, which indicates she has some computer proficiency.

The aforementioned objective findings and admitted and indicated activities and abilities do not support a determination that the claimant is completely disabled by her mental impairments. Instead, the relatively normal examination findings from throughout the record, as well as the indications and admissions that the claimant gardens, cares for her children, and drives, all support a determination that the claimant can perform jobs consistent with the limitations in Finding 5, above. The limitation to short, simple, routine tasks, and the limitation to attending and concentrating for two hours, after which she is expected to be off task for approximately three minutes accommodate the moderate impact the claimant's mental impairments cause on her activities of daily living and her concentration, persistence, and pace. The limitation to working in customary proximity to coworkers; the preclusion from coordinating with coworkers in order to complete her own tasks; and the limitation to occasionally interacting with the public accommodates the moderate impact the claimant's mental impairments cause on her activities of daily living and concentration, persistence, and pace. The record simply does not support additional limitations.

As for mental opinion evidence, I have considered and give great weight to the April 2015 opinion of Joanna Koulianos, Ph.D., who reviewed the evidence of record and indicates that the claimant is able to perform unskilled work with additional social limitations and limitation to attending and concentrating for two-hour periods. This opinion is generally consistent with the relatively normal examination findings from throughout the evidence of record, as well as the claimant's admitted and indicated activities and abilities, which include caring for her children, gardening, shopping, and driving.

I again note that the September 2015 opinion of Chris Zandt, a physician's assistant, comes from a non-acceptable medical source. Additionally, this opinion is inconsistent with the relatively normal mental status examination findings and the claimant's admitted and indicated activities and abilities. It is accordingly given little weight.

Over the course of the claimant's treatment, she was assigned a global a[ssessment] of functioning (GAF) score of 50. According to the *Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition) (DSM-IV)*, a GAF score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). According to the Commissioner, however, GAF scores are but one tool used by clinicians to develop the clinical picture and cannot be used in isolation from the rest of the evidence to make a disability determination. In this case, the claimant's ability to care for two children, perform household chores, garden, handle her own finances, and drive undermine any indicated severity of low GAF scores. Furthermore, the Commissioner has specifically declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." As a result, I give these GAF opinions no weight.

Finally, [w]ith regard to the claimant's VA disability rating of 90 percent in Exhibits 16E, 2F, and 7F, I am aware that VA disability ratings are entitled to "great weight". A fair reading of *Brady* [*v. Heckler,* 724 F.2d 914 (11th Cir. 1984)], however, reveals that the Eleventh Circuit seemingly intended that great <u>consideration</u> be given to the VA rating and the evidence on which it was based, which is why that case, in which the claimant had a disability rating of 100 percent, resulted only in remand for further consideration, and not a decision that was reversed and rendered or a decision finding that the veteran claimant was, in fact, disabled. This is consistent with the fact that findings by other governmental agencies are not binding on the Commissioner, and the Eleventh Circuit specifically notes this also applies to VA disability ratings.

Further, the two agencies use completely different standards—a review of the applicable sections of the Code of Federal Regulations reveals that all reasonable doubt in VA disability cases is resolved in favor of the veteran claimant, which is opposite of the process dictated in disability cases. In this case, the VA disability rating is inconsistent with [] much of the aforementioned objective medical evidence, while the residual functional capacity [assessment] set forth above is consistent with the overall evidence of record, including the VA medical records. Moreover, the claimant's acknowledged activities of daily living are not consistent with

the VA disability rating, which includes caring for her children, performing some household chores, gardening, handling her own finances, and driving. Accordingly, based on the overall evidence of record, I have given the VA disability rating great consideration but determine that it is inconsistent with the overall evidence of record.

In sum, based upon a review of the medical evidence of record and the claimant's admitted activities and abilities, I find the evidence does not support the claimant's allegations of totally incapacitating symptomatology. The record fails to document persistent, disabling loss of functional capacity resulting from the claimant's severe impairments. The above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record, including objective evidence, opinion evidence, and the claimant's indications and admissions as to activities and abilities. After considering the entirety of the record, I conclude that the claimant can perform a range of work consistent with what is set forth in Finding 5, above.

(Tr. 30 & 31-36 (internal citations and footnotes omitted)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating

---

[2]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to h[er] past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary, unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131

(11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Love asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to assign adequate weight to the opinion of Chris Zandt, PA, , as an "other source," in accordance with 20 C.F.R. § 404.1513(d) and SSR 06-03p; and (2) the ALJ reversibly erred in failing to fully consider the treatment records and opinions of the Department of Veterans Affairs with respect to the VA's rating decision of 70% for Plaintiff's PTSD, in violation of SSR 06-3p and 20 C.F.R. § 404.1504.

**A. Opinion of Chris Zandt, PA, an "Other Medical Source"**. On September 10, 2015, Chris Zandt, a physician's assistant with the Department of Veterans Affairs Gulf Coast Veterans Health Care System penned a "To whom it may concern" opinion letter relative to her treatment of Plaintiff, as follows: "My patient, Latashia Marieal Love, [] has been unemployed since April 1, 2015. The reason for her unemployment is strongly because of her many physical and mental disabilities, for which she is service connected disorder (sic). Due to the severity of her disabilities,

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

especially for the PTSD, which I am treating her for, it is my medical opinion that she CAN NOT sustain or obtain employment. I agree with the U.S. Army, who medically retired/separated her from service June 12, 2014 due to this disability[.] PTSD is permanent and totally disabling." (Tr. 445.)

Physicians' assistants are excluded from the list of "acceptable medical sources" whose opinions are to be considered in determining the existence of an impairment. *See, e.g.,* 20 C.F.R. § 404.1513(a) (2016). However, medical sources who are not "acceptable medical sources" are considered "other sources" and their opinions and evidence may be used "to show the severity" of an impairment and "how it affects [the] ability to work[.]" *See* 20 C.F.R. § 404.1513(d) (physicians' assistants included in subsection (1)). Social Security Ruling 06-03p clearly provides that the factors listed in 20 C.F.R. § 404.1527(d) can be applied to opinion evidence from medical sources who are not "acceptable medical sources," including the following factors: (1) how long the source has known the claimant and how frequently the source has seen the claimant; (2) how consistent the source's opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support the opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the source's opinion. *Id*. The ruling goes on to explain that not every factor listed will apply in every case. *Id*. And, finally, the ruling explains that the "adjudicator generally should explain the weight given to opinions from [] 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning . . . ." *Id*.

With these principles in mind, the undersigned considers Plaintiff's argument that the ALJ erred in failing to assign adequate weight to the opinion of Chris Zandt, PA. In particular, Plaintiff avers that Zandt's opinion, which is set forth above, is consistent with the medical evidence of record and should have been assigned significant weight since it "revealed the severity of [her] PTSD and how it affected her ability to function[.]" (Doc. 9, at 7.) While the Plaintiff is correct in suggesting that a non-accepted medical source like Zandt may well occupy a position which would qualify her to give an opinion showing the severity of plaintiff's impairments and how her impairments affect her ability to work (*see id.*), this Court cannot agree with her suggestion that the ALJ failed to accord Zandt's opinion appropriate weight (*id.*). Instead, the Court finds that the ALJ properly afforded Zandt's opinion "no weight" and "little weight." (*Compare* Tr. 33 *with* Tr. 35.) The ALJ in this case twice evaluated Zandt's opinion, once in that portion of her opinion directed to Plaintiff's physical impairments (*see* Tr. 33) and, again, in that portion of the administrative decision directed to Plaintiff's mental impairments (*see* Tr. 35). The analysis of the ALJ in the physical impairments portion of the administrative decision consists of the following:

> I give no weight to the September 2015 opinion of Chris Zandt, Physician Assistant, as [s]he is not a medically acceptable source, any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner, and this opinion is inconsistent with the relatively normal examination findings from throughout the record, as well as the claimant's admitted and indicated activities and abilities.

(Tr. 33 (internal citations omitted).) With respect to the mental impairments portion of the administrative decision, the ALJ made the following determination:

> I again note that the September 2015 opinion of Chris Zandt, a physician's assistant, comes from a non-acceptable medical source. Additionally, this

opinion is inconsistent with the relatively normal mental status examination findings and the claimant's admitted and indicated activities and abilities. It is accordingly given little weight.

(Tr. 35.)

The undersigned finds that the ALJ properly rejected the opinion by Zandt that Plaintiff is incapable of sustaining or maintaining employment because that is a dispositive issue reserved to the Commissioner.[4] *Compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner."). And to the extent any other portion of Zandt's opinion can be regarded as a comment on the severity of Plaintiff's PTSD or how it affects Plaintiff's ability to work[5]—presumably, the comment that Plaintiff's PTSD is permanent and totally

---

[4]    Although this reason is contained in the "physical impairments" portion of the ALJ's decision, it is particularly applicable to the "mental impairments" portion of the decision inasmuch as Zandt's statement that Love is incapable of sustaining and maintaining employment comes within the context of the sentence in which she specifically references Plaintiff's PTSD as the condition she is treating. (*See* Tr. 445.) And while the ALJ's criticism of Zandt's opinion in this regard is not a specific "factor" listed in SSR 06-03p, it is an appropriate criticism. *Miles v. Social Security Administration, Commissioner,* 469 Fed.Appx. 743, 745 (11th Cir. Mar. 15, 2012) ("[A] medical source's statement that a claimant is 'unable to work' or 'disabled' does not bind the ALJ, who alone makes the ultimate determination as to disability under the regulations.").

[5]    This Court cannot regard Zandt's opinion that Plaintiff's PTSD is permanent and totally disabling as an opinion establishing how Love's PTSD affects her ability to work, inasmuch as it does not explain explicitly how her PTSD impacts certain mental activities required to work, "such as limitations in understanding, remembering, and carrying out (Continued)

disabling—the ALJ set forth several reasons for according Zandt's opinion little weight, in accordance with SSR 06-03p. *See Montgomery v. Astrue,* 2013 WL 3152278, *8 (N.D. Ala. Jun. 18, 2013) ("Here, the ALJ does not address every factor [listed in SSR 06-03p] as pointed out by Plaintiff; however, the ALJ was not required to explicitly address every factor as long as the ALJ provides '"good cause" for rejecting a [nurse practitioner's] medical opinions.'"). In particular, the ALJ noted that Zandt's opinion was "inconsistent with the relatively normal mental status examination findings" in the record (Tr. 35), which is an identified factor in SSR 06-03p, *see id.,* citing 20 C.F.R. 404.1527(d)(2) (identifying as a factor, "how consistent the source's opinion is with other evidence"). Indeed, Zandt's own records reflect mild mental status examination findings (Tr. 349 (on February 19, 2015, Love denied any current psychiatric concerns and Zandt made the following objective findings: "Mood is euthymic[6] with pleasant appropriate affect. Thought process and content is organized and logical with adequate insight and judgment. Good eye contact with soft clear speech and relevant answers." (footnote added)); Tr. 549 (on September 10, 2015, Zandt made the exact same observations as made on February 10, 2015, and noted that Love's mood and anxiety were "fairly well controlled with current treatment."); Tr. 564 (on August 5, 2015, Zandt noted that Love denied any current psychiatric concerns and noted the following

---

instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting[.]" *See* 20 C.F.R. § 404.1545(c) (2016).

[6]    Euthymic is defined as "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." http://medical-dictionary.thefreedictionary.com/euthymic (last visited April 26, 2017, at 5:17 p.m.).

objective findings: "Mood is dysthymic[7] with pleasant appropriate affect. Thought process and content is organized and logical with adequate insight and judgment. Good eye contact with soft clear speech and relevant answers.")), as do other relevant medical VA records (*see, e.g.,* Tr. 504 (on October 2, 2015, Dr. Lisa Wurst, a psychologist, noted the following with respect to mental status: "Veteran was dressed properly and arrived on time. Veteran was oriented to person, place, time, and situation. Veteran displayed an appropriate attitude toward the provider and rapport was quickly and easily established. Veteran was able to reasonably attend to and concentrate during the interview. Mood was reported as "hurting"; affect was dysthymic. Eye contact was appropriate. Speech had a normal rate, volume and tone. Veteran DENIED current suicidal/homicidal thoughts, plans, behaviors, or intent."); Tr. 526, 528-29 & 531-32 (several notes from a VA psychology resident regarding Love's failure to show for appointments, contact being made with Plaintiff by telephone for rescheduling of appointment, all containing language that Plaintiff "adamantly denied the experience of suicidal and homicidal ideation, intent, plan, and means."); Tr. 555 (within the context of a general examination of Love conducted on September 4, 2015, the following psychiatric observations were made: "Patient is alert & oriented x3, cooperative and in no apparent distress. Adequately[]groomed, casually, appropriately attired. Eye contact is good[.] Motor activity: normal[.] Concentration: intact[.] Speech is normal in rate, volume, tone and prosody. There is no aphasia. Thought Processes are goal directed. Thought Content reveals no suicidal or homicidal ideation. No perceptual disturbance.

---

[7]     Given that dysthymia is a form of depression less severe than major depression, *see* http://www.health.harvard.edu/newsletter_article/Dysthymia (last visited April 27, 2017, 10:28 a.m.), it can be extrapolated that Zandt's observation was that Love's mood was mildly depressed.

Mood/Affect: normal; Memory is intact to recent and remote events. Judgment/Insight is good.") & Tr. 585 (mental status on July 9, 2015, in connection with a C&P examination of PTSD by Dr. Chad Hagans: "Well-groomed. Alert and fully oriented. Speech normal in rate, tone, and syntax. Thought content and process unremarkable. Mood presented as moderately labile with generally somewhat blunted affect, as though mildly fatigued and/or sedated, though excessively reactive at times. No observable responsiveness to internal stimuli. Hallucinations and delusions denied. Suicidal and homicidal ideation, intent, and planning denied. No observable impairment in attention, concentration, or memory.")). In light of these mild psychiatric observations by VA care providers, the ALJ did not err in affording Zandt's conclusory letter opinion[8] "little" (or "no"[9]) weight. *Cf. Kennedy v. Colvin,* 2015 WL 1003845, *8 (N.D. Fla. Mar. 5, 2015) ("The ALJ gave 'little weight' to the opinions of Ms. Breland because he found them 'inconsistent with the other evidence in the record.' [] The ALJ also found that the 'treatment notes from Ms. Breland's clinic, the Washington County Health Department, fail[ed] to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant in fact were disabled.' [] The undersigned agrees that Ms. Breland's opinions were entitled to little weight. Not only are they inconsistent with and unsupported by other evidence in

_____

[8]      The undersigned parenthetically emphasizes that Zandt's opinion was conclusory, that is, she did not explain it well, *see* 20 C.F.R. § 404.1527(d)(4).

[9]      This Court finds that the ALJ appropriately gave no weight to Zandt's conclusory medical opinion to the extent it could be broadly read to apply to the "physical disabilities" she references in the second sentence, given that the remaining sentences of the opinion make no mention of any specific physical impairments and certainly make no comment with respect to the severity of those unidentified physical impairments or how (exactly) those unidentified impairments affect Love's ability to work (Tr. 445). *See* 20 C.F.R. § 404.1513(d) (providing only that the ALJ may use evidence from "other sources to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work."). In other words, the ALJ was not required to utilize Zandt's opinion with respect to the evaluation of Love's physical impairments.

the record, but like Dr. Harmon-Sheffield's opinions, they also were conclusory and expressed on pre-printed check-off forms.").[10]

### B. Disability Rating Decision of the Department of Veterans Affairs.

Love contends that the ALJ reversibly erred in failing to fully consider the treatment records and opinions of the Department of Veterans Affairs with respect to the VA's rating decision of 70% for her PTSD, in violation of SSR 06-3p and 20 C.F.R. § 404.1504.[11] In particular, the Plaintiff disagrees with the ALJ's determination that the VA's disability rating was inconsistent with the medical evidence of record and Plaintiff's reported activities of daily living. (*See* Doc. 9, at 8-10.)

On September 4, 2013, the Department of Veterans Affairs notified Love that her "overall or combined" service-connected disability was 90% (Tr. 283), based upon the following service-connected conditions: PTSD with depressive disorder NOS and pain disorder (70%); migraine headaches (50%); lumbar strain with right lower radiculopathy (40%); and hypertrophy of the turbinates (10%). (*Id.*) The VA explained to Plaintiff that in reaching the combined rating of 90%, it did not "add the individual percentages of each condition"; instead, it "used a combined rating table that considers the effect from the most serious to the least serious conditions." (*Id.*)

---

[10]    The lack of significant psychiatric observations by Love's VA caregivers is a sufficient enough reason, standing alone, for the ALJ to accord Zandt's opinion "little" weight, without regard to the reference to Plaintiff's "admitted and indicated activities and abilities." (Tr. 35.)

[11]    Section 404.1504 provides that "[a] decision by any . . . other governmental agency about whether [a claimant is] disabled . . . is based on its rules and is not [the SSA's] decision about whether [the claimant is] disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that [a claimant is] disabled . . . is not binding on [the SSA]." *Id.*

The Eleventh Circuit has recognized that although a disability rating decision by the Veterans Administration is not "binding" on the ALJ, such a rating is entitled to "'great weight[.]'" *Pearson v. Astrue,* 271 Fed.Appx. 979, 981 (11th Cir. Apr. 1, 2008), citing *Brady v. Heckler,* 724 F.2d 914, 921 (11th Cir. 1984); *see also Kemp v. Astrue,* 308 Fed.Appx. 423, 426 (11th Cir. Jan. 26, 2009) ("'A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight.'"); *see Rodems ex rel. Rodems v. Colvin,* 2014 WL 795966, *4 (N.D. Ala. Feb. 27, 2014) ("An ALJ is obligated to consider a disability rating assigned by another agency, not just the medical records behind the rating, but there is no obligation to agree with the rating."). Moreover, as noted in *Kemp, supra,* "[t]he ALJ must 'state specifically the weight accorded to each item of evidence and why he reached that decision.'" 308 Fed.Appx. at 426, quoting *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981).

In this case, although the ALJ did not explicitly identify the "type" weight (that is, great, significant, little, none) she was according the VA disability rating in her decision, she implicitly signaled that she was affording the rating little weight, in light of her explanation that she had given the disability rating "great consideration" and determined that "it [was] inconsistent with the overall evidence of record." (Tr. 36.) The ALJ's decision makes clear that she reached this conclusion not only because "[t]he two agencies use completely different standards" (*id.*)[12] but also because her (the ALJ's)

---

[12] The standard for VA disability is not the same as the standard for disability under the Social Security Act. *Compare Kemp, supra,* 308 Fed.Appx. at 426 ("The SSA regulations specify that a decision by any non-governmental or governmental agency about whether an individual is disabled is based on its own rules and does not constitute a SSA decision about whether an individual is disabled." (citation omitted)) *with Pearson, supra,* 271 Fed.Appx. at 981 (Continued)

RFC assessment of unskilled sedentary work (including that Love can only perform short, simple, routine tasks; can work in close proximity with coworkers but is unable to coordinate with coworkers in order to complete her own tasks; can have only occasional interaction with the public; and the ability to attend and concentrate for 2 hours, after which she must be "off task" for 3 minutes before resuming work tasks) was "consistent with the overall evidence of record, including the VA medical records." (*Id.*; *see also id.* ("Moreover, the claimant's acknowledged activities of daily living are not consistent with the VA disability rating, which includes caring for her children, performing some household chores, gardening, handling her own finances, and driving.")).

While this Court does not necessarily disagree with Plaintiff that the ALJ in this case failed to take into consideration the full scope of her testimony regarding her "acknowledged activities" (*see* Doc. 9, at 8-10),[13] any error in the ALJ's reliance on this reason to accord little weight to the disability rating is harmless inasmuch as the Court agrees with the ALJ that the medical evidence of record in this case, including the VA records,[14] is inconsistent with the VA's disability rating and, instead, supports the ALJ's

---

("The record establishes that the administrative law judge considered the rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act." (citations omitted)).

[13]    The undersigned would note, however, that the ALJ's analysis in this regard did not totally "miss the mark" inasmuch as Plaintiff unequivocally reported that she was able to handle her finances (Tr. 184 (Love reported she could pay bills, count change, handle a savings account, and use checks and money orders)), an ability which is unequivocally supported in the record (*see, e.g.,* Tr. 588 (as part of the July 9, 2015 C&P examination of Love's PTSD, Dr. Chad Hagans noted Plaintiff was capable of managing her financial affairs)).

[14]    The undersigned notes that that ALJ made numerous references to the VA records, upon which the VA disability rating was based, in the course of making her own determination that Love was not disabled (*see* Tr. 31-32 & 34). *See Adams v. Commissioner of Social Security,* 542 Fed.Appx. 854, 857 (11th Cir. Oct. 24, 2013).
(Continued)

RFC determination, and ultimate finding of no disability. In particular, given Plaintiff's focus on the 70% rating for PTSD (*see* Doc. 9, at 9),[15] the Court notes that the mild psychiatric findings recorded by Love's VA caregivers (*see* Tr. 349, 503, 526, 528-29, 531-32, 549, 555, 564 & 585) are inconsistent with the PTSD disability rating of 70%[16] and entirely consistent with the ALJ's determination that claimant retains the RFC to perform a range of unskilled sedentary work that requires the ability to perform only short, simple, routine tasks, work in close proximity with coworkers that would not require coordination with coworkers in order to complete tasks, only occasionally have

<hr>

[15]    Plaintiff's counsel also stated during oral arguments that this assignment of error was primarily directed to Love's mental disability rating.

[16]    Indeed, the VA physician who conducted the C&P examination of Love's mental impairments on July 9, 2015, Dr. Chad Hagans, noted that based solely on Plaintiff's subjectively-reported functional impairment, the claimant would most likely have occupational and social impairment due to "*mild or transient symptoms* which *decrease work efficiency* and *ability to perform occupational tasks* **only during periods of significant stress, or []** **symptoms controlled by medication**." (Tr. 582 (emphasis supplied); *see also id.* ("The Veteran's **current level of occupational and social impairment cannot be determined** **without resort to mere speculation** (i.e., to a reasonable degree of professional certainty), **due to objectively assessed response bias** in the current exam [], and the absence of corroborative information regarding the Veteran's reported functioning from impartial third parties in the records made available by the referral source. VA policy prohibits the undersigned from obtaining information beyond that which was included in the records made available by the referral source." (emphasis supplied)); *compare id. with* Tr. 585-86 ("**Objectively assessed** **response bias in the current exam** (Rey Word Recognition score=5; and a score that exceeded the recommended cut score on a two-alternative forced-choice test) **precluded a** **valid psychometric assessment of the Veteran's current symptomatology.** The above diagnosis of PTSD is therefore based on the Veteran's medical records exclusively. PTSD symptoms checked below were those endorsed by the Veteran on the PCL-5 as 'moderate' or more severe during the past month. **In the presence of an external incentive,** and in the absence of the provision of or the ability to obtain additional information regarding the Veteran's psychological functioning from impartial third parties, the validity of Veteran's symptom endorsement on the PCL-5 is considered unknown and unable to be determined to a reasonable degree of professional certainty." (emphasis supplied)). Accordingly, the records from Dr. Hagans support the ALJ's ultimate determination that Plaintiff is mentally capable of performing work activity.

interaction with the general public, and the ability to attend and concentrate for 2 hours, after which she will be "off task" for 3 minutes before resuming work tasks.[17] Accordingly, the Court cannot find that the ALJ erred in the manner described by Love inasmuch as the ALJ fairly considered the treatment records and opinions of the VA with respect to that department's 70% PTSD disability rating.

In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Love can perform the physical and mental requirements of a range of sedentary work as identified by the ALJ (*see* Tr. 30; *compare id. with* Tr. 349, 370-71, 373, 435-37, 477, 479, 503, 526, 528-29, 531-32, 547, 549,

---

[17]   To the extent necessary, the Court also notes that the ALJ's determination that Love can perform the exertional requirements of a range of sedentary work (*see* Tr. 30 ("**She can lift and carry 10 pounds occasionally. She can stand or walk 2 hours per eight-hour workday and sit for 6 hours per eight-hour workday, with customary breaks. She can occasionally stoop, but is precluded from climbing, kneeling, crouching, and crawling. She is precluded from working at unprotected heights; operating hazardous, moving equipment, or driv[ing]. She is precluded from exposure to loud noises or noxious chemical fumes or gases. She is precluded from pushing and pulling leg and foot controls. She requires a hand-held assistive device for prolonged ambulation (more than three minutes) on uneven terrain. She cannot work around light above the office level, and cannot operate vibratory equipment.**")) is consistent with the medical evidence of record regarding Plaintiff's physical impairments (*compare id. with, e.g.,* Tr. 370-71; Tr. 373 (on examination on April 29, 2014, Plaintiff denied acute pain or discomfort and reported that she had not fallen since her previous visit); Tr. 435-37 (MRI of the lumbar spine in June of 2013 showed no degenerative arthritic spurring in the disk spaces or facet joints but partial sacralization of L5, with fusion on the left and a January 2015 MRI of the left hip reflected the partial sacralization left L5 with pseudoarticulation L5-S1); Tr. 477 & 547 (September 14, 2015 report of no pain); Tr. 479 (July 22, 2015 report of no pain); 573-74 (examination on July 22, 2015, revealed Love was in no acute distress, her gait and station were without abnormality, full range of motion of back with some pain, and tender to palpitation at L4-5); Tr. 595 (notation in June 25, 2015 C&P examination that a February 18, 2015 MRI of the lumbar spine was normal—the vertebral bodies and intervertebral discs were normal—with no evidence of canal or neuroforaminal stenosis; the spinal cord demonstrated normal signal and the soft tissues and osseous structures were normal); Tr. 594-601 (questionnaire completed by Dr. Brett E. Jeffrey as part of his June 25, 2015 C&P examination of Plaintiff's thoracolumbar spine revealed few significant physical findings, with the examiner concluding that her back condition—described by him as lumbosacral strain with radiculopathy—would not impact her ability to work because of minimal functional impairment—ROM close to normal, normal MRI, and normal lower extremity nerve conduction study) & Tr. 608 (April 27, 2015 examination reflected that though Love complained of low back pain, she was in no acute distress).

555, 564, 573-74, 585, 594-601 & 608), and plaintiff makes no argument that this residual functional capacity would preclude her performance of the sedentary jobs identified by the VE during the administrative hearing (*compare* Doc. 9 *with* Tr. 73-74), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 19th day of May, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**